STATE ex rel. SCHOOL DISTRICT, Relator, *v.* CARROLL, District Judge, et al., Respondents.

(No. 6,653.)

(Submitted February 18, 1930. Decided February 27, 1930.)

[284 Pac. 1008.]

*Mr. T. J. Davis, Mr. H. J. Freebourn* and *Mr. Harlow Pease,* for Relator, submitted a brief; *Mr. Pease* argued the cause orally.

*Mr. Earle N. Genzberger* and *Mr. Edwin M. Lamb,* for Respondents, submitted a brief; *Mr. Genzberger* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

Application for a writ of prohibition. The subject matter of this inquiry is the legality of the jury panel which was in attendance upon department 2 of the district court of Silver Bow county on February 13, 1930. On that day, pursuant to a prior setting, there came on for trial a cause in which Margaret McBride was plaintiff and school district No. 2 of Silver Bow county was defendant. When the cause was called the defendant announced itself not ready for trial, and interposed a challenge to the array or panel of jurors then before the court. The court, after hearing the evidence presented, denied the challenge; hence this application. Relator urges three grounds for its challenge.

1. The first is, in short, that relator is entitled to a jury drawn from the 1930 jury list, while the one in attendance was drawn from the 1929 list. The challenged jury was drawn December 17, 1929, impaneled January 2, 1930, and is still serving.

The jury commissioners met on the second Monday of January pursuant to statute and entered upon their duties. (Sec. 8896; Rev. Codes 1921.) While the statute requires the jury commissioners to select from the last assessment-roll of the county and to make a list of the names of all persons qualified to serve as trial jurors (sec. 8897), and to deliver the list to the clerk of the district court "within five days after the meeting" (sec. 8898), the list had not been delivered to the clerk on February 13. The cause of the delay is not satisfactorily explained. That the jury commissioners, for a good or a poor reason, apparently have failed to comply with the provisions of the statute will not be permitted to paralyze

the functions of the courts. The district court had in attendance a jury panel which, if selected, drawn, summoned and notified as prescribed by law, was not affected by the fact that on the day of the trial the jury commissioners had not returned the jury list for 1930. *State ex rel. Clark* v. *District Court,* 86 Mont. 509, 284 Pac. 266, is not in point; in that case the jury list for 1930 had been filed before a jury drawn and summoned from the 1929 list had been impaneled.

To what extent, or when, a regular jury panel in attendance upon the court may be affected by a failure of the jury commissioners to perform their duty we are not now called upon to decide.

*Obiter:* It would seem that a failure to file the new jury ██ list, in accordance with the statutory direction, should not be held to affect an otherwise unexceptional jury panel in attendance upon the court. Why, if the court has a jury panel qualified to function, should the delay mentioned obstruct the orderly process of the administration of justice? Nor does filing the new jury list *ipso facto* cut off the life of a panel in attendance. It must be borne in mind that after the new list is filed a reasonable time is required to make the jurors whose names appear thereon available for service. (Secs. 8889, 8902–8904, 8910, 8912, 8922.) But, a jury being required for the trial of cases, the services of the jurors whose names appear upon the new jury list should be commanded with all speed; otherwise a jury drawn from the old list might be held for service indefinitely, which is clearly not within the spirit of the law.

2. It is argued that the jurors of which the panel is composed ██ were illegally summoned, in that the summons used by the sheriff ''was in the alternative and not an absolute requirement to attend upon the return day''; that the summons authorized the jurors to interview the judge privately and be excused in advance of the return day.

When the court has made its order for the attendance of a jury in accordance with section 8902, and the clerk has drawn the required number of jurors from jury-box No. 1,

made a copy of the list of the names of those drawn, certified the same, and delivered the certificate to the sheriff for service (secs. 8903, 8904), the sheriff is required to summon the persons named to attend court at the time mentioned in the order (secs. 8910–8912).

The statute does not prescribe any form of summons for this purpose. Upon an inspection of the summons used it appears that the juror is "commanded to be and appear in department No. 2 before W. E. Carroll, Judge, at the court house in Butte, county and state aforesaid," at a definite time, then and there to serve as a petit juror. The summons is signed and dated by the sheriff. Underneath there is the following: "N. B. If you have a good reason why you should not serve as a juror, then return this summons, personally, to the judge any time before the date set and present your excuse to him. No telephone calls will be accepted. Your personal attendance is required."

There is nothing equivocal about the language appearing over the signature of the sheriff; it is a positive command that the person summoned appear at the courthouse at a definite time, then and there to serve as a petit juror. While we do not agree that the language following the abbreviation "N. B." —*nota bene*—note well—has the effect ascribed to it by counsel for relator, we do not approve its use. Doubtless the purpose is to save expense, the reason being that, if a person summoned to serve as a trial juror has a good excuse, he may be relieved from appearing upon the return day and thus the county will not be required to pay the fee which it would have to pay if he presented himself at the opening of court and was then excused. Nevertheless it cannot be gainsaid that the notice has the effect of suggesting to a prospective juror who does not desire to serve that he interview the judge in private. Many a man will not present an excuse of doubtful merit before a crowded courtroom which he will tenaciously urge upon the judge in private, especially if he is well acquainted with that officer.

We overrule the contention that the jury was not properly summoned, but shall advert to the subject of excuses under the next head.

3. The third point is that "a number of jurors actually ■■ drawn and served were excused from attendance irregularly and illegally, not in open court, nor at the time set for the return of the venire, for reasons not made known in open court."

The facts are that on December 17, 1929, Judge Carroll found the business of his department required the presence of a jury for the trial of civil cases, and, there being no jury then in attendance, it was regularly ordered that a trial jury of 100 names be drawn and summoned to attend on January 2, 1930. The drawing having been made, list made up, and certificate given to the sheriff, that officer summoned 61 of the 100 persons drawn. Prior to the return day the court excused 14 of the 61, and on the return day made a formal order excusing them; he told those excused they need not be present on the return day. Apparently others were excused on the return day, for but 35 were impaneled. That number Judge Carroll has found, from his years of experience, is sufficient for the transaction of civil business in his court; and during the trial of cases from January 2, 1930, to February 13, it had not been necessary to summon additional jurors. Of the 14 excused prior to the return day, 7 were not qualified to serve: 1 was under age, 1 over 70, 1 unable to hear, 1 a woman, 1 not a resident of Montana, 2·not citizens. Three were unable to serve because of illness. The other 5 were of a different character, the excuses not going to the competency or ability of the jurors to serve. One "presented a business excuse as a traveling salesman." Another was "a man of family, and under labor conditions would lose his job, and his family would suffer detriment." The judge stated "that in each instance of application for leave to be excused from jury service good and sufficient reasons were presented to the judge in person, and considered by him and finally passed upon on January 2, 1930." As is seen, these excuses

fall into two groups, the first embracing those not qualified, or unable to serve, and the second those excused by the judge for what he termed good and sufficient reasons.

Clearly the court cannot be said to have erred, nor to have affected the integrity of the panel in excusing any of those in group one. The law does not require absurdities. Surely no one will be heard to say that the judge erred in excusing a woman, a youth under age, a nonresident of the state, or a person unable by reason of sickness to rise from his bed. It is the duty of the court to retain upon the panel only those who are competent, as defined in section 8890, Revised Codes 1921, and the judge clearly has the right to excuse those who are not.

Section 8894, Revised Codes 1921, declares: "A juror must not be excused by a court for slight or trivial cause, or for hardship or inconvenience to his business, but only when material injury or destruction to his property, or of property intrusted to him, is threatened, or when his own health, or the sickness or death of a member of his family, requires his absence." One design of this statute is to prohibit courts and judges from heeding the plaints of those to whom jury service is distasteful. The law does not seek merely to obtain a sufficient number of men to constitute a trial jury. It is concerned with the composition of the jury. Its purpose is to have in attendance upon the court men suited for jury service drawn from the various walks of life. For, as the eminent Judge Cooley has said in speaking of juries as triers of facts, "the law has established this tribunal because it is believed that, from its numbers, the mode of their selection, and the fact that the jurors come from all classes of society, they are better calculated to judge of motives, weigh probabilities, and take what may be called a common sense view of a set of circumstances, involving both act and intent, than any single man, however pure, wise and eminent he may be." (*People* v. *Garbutt*, 17 Mich. 9, 97 Am. Dec. 162.)

The purpose goes still deeper. Jury service brings the citizen into contact with the law, and makes him a constituent

part of legal administration. It gives him "the sort of training that is needed in a people who are to live under free institutions." (The Story of Law, by John M. Zane, 310.) Moreover, it is as much the duty of the citizen to serve upon the jury when summoned and to carry his part in the administration of public justice as it is for him to respond to the nation's call to arms. The evasion of jury duty by many of those usually regarded as good—even as "the best"—citizens is notorious. It is one ground for the frequent criticism of legal administration. The spirit of the statute denounces the practice of excusing those who, by reason of business ability and experience, are well qualified to pass upon the important issues which must be decided by a jury. The statute does not permit the judge to excuse a juror "for hardship or inconvenience to his business," but too frequently it is regarded as if it permitted rather than denied an excuse upon that ground. We reiterate the words of Mr. Justice Matthews in the recent case of *Charles Lehman & Co.* v. *Skadan,* 86 Mont. 553, 284 Pac. 769, that trial judges harden their hearts against excuses earnestly urged but too often lacking in merit.

Counsel for relator direct our attention to sections 8895 and 8922, Revised Codes 1921, which they insist prescribe limitations beyond which the judge may not pass in exercising the right to grant excuses. Section 8895 relates to those who are exempt from jury service by statute; they may claim their exemption by affidavit transmitted to the clerk for presentation to the judge. Section 8922 provides in part that, "at the opening of court on the day trial jurors have been summoned to appear, the clerk shall call the names of those summoned, and the court may then hear the excuses of jurors summoned." This relates to the impaneling of the array. (*State ex rel. Clark* v. *District Court,* supra.) The practice is, and we commend it, to swear the jurors when their names are called, then to inquire into their qualifications, and to hear excuses. But it cannot be held that the court is circumscribed by those two statutes. If it were so, how could the court excuse a man, not exempt, who by reason of physical

disability, or by reason of being held in quarantine, could not be present in court on the opening day? The answer must be that, in exercising the right to excuse from jury service, the court must exercise a sound discretion. It should go without saying that in hearing excuses before the return day, the judge should, to avoid being imposed upon, take all the precautions that the court takes when sitting to impanel the array.

Counsel for relator, in urging us to adopt the statutory construction for which they contend, emphasize the opportunity for evil to which another course may lead. They admit the judge may excuse for cause, but say he must do so "in open court with circumstances of public hearing to guarantee bona fides as far as possible, both on the part of the juror and of the judge." They argue that, if the judge is permitted to hear excuses privately, and to exercise the right to excuse at pleasure, he may "pack the jury in any given case as though the selection of the entire jury were left exclusively to him." (*State* v. *Groom*, 49 Mont. 354, 141 Pac. 858.) Arbitrary action of the imagined kind might result in a judge (unworthy of his trust and unfitted to remain upon the bench) selecting jurors to suit his purpose, warranting a challenge to the panel. But no such deplorable situation can arise if the statutes are followed. The supposititious case is very far from the one before us, in which his honor acted in entire good faith. Granting that in one instance, that of the traveling salesman, the excuse was probably insufficient, this departure from the law is not sufficient to vitiate the panel. The certificate of the judge that in each case good and sufficient excuses were presented by the jurors must mean that the excuses were within the spirit as well as the letter, of the statute. It is presumed that official duty has been regularly performed.

The third ground of challenge is not justified by pleading or proof.

The proceeding is dismissed.

ASSOCIATE JUSTICES MATTHEWS, GALEN, FORD and ANGSTMAN concur.